UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY DEMARCO, et al., | Civil Action No. 14-4623 (PGS) |
| Plaintiffs, | |
| v. | MEMORANDUM OPINION |
| DIRECTV, LLC, et al., | |
| Defendants. | |

**BONGIOVANNI, Magistrate Judge**

1. **Introduction**

Before the Court are two motions. First, is Plaintiffs' Anthony DeMarco, Edward Hart, Michael Healey, Roger Johnson Jr., Mark Kornytchuk, Joseph Manzo, Alex Mirosh, Eliud Ortiz, and Brian Shortino, (collectively the "current Plaintiffs") Motion for Leave to File Their First Amended Complaint.  [Docket Entry No. 100].   The current Plaintiffs wish to make eight amendments to their Complaint. First, the current Plaintiffs seek to add a claim under the Fair Labor Standards Act ("FLSA") and New Jersey state law for four new Plaintiffs: Suleyman Aliyev, Carlos Beltre Perez, Diogenes Polanco, and Mario Romero (collectively the "new Plaintiffs"), including Mario Romero's retaliation claims pursuant to 29 U.S.C. § 215(a)(3). Plaintiffs also wish to clarify and update the factual allegations of each Plaintiff by specifying the nature of the work each Plaintiff performed, and in which state each Plaintiff primarily worked; to correct and clarify the Plaintiffs' claims as to the provider Defendants; to update the jurisdiction and venue allegations in light of the transfer of the of this case from the Central District of California; to remove Defendant DIRECTV, Inc. following its merger with

1

DIRECTV, LLC; to remove the names of Eulid Ortiz and Brian Shortino from the caption in anticipation of their filing a notice of voluntary dismissal pursuant to Federal Rule of Civil Procedure ("Rule") 41(a)(1)(A)(i); to redraft the caption, formatting, and insert the parties' addresses; and to clarify and update the allegations throughout.

Defendants DIRECTV, LLC ("DIRECTV"), and two companies characterized as "Home Service Providers" ("HSP"), DirectSat USA, LLC ("DirectSat") and Multiband Corp. ("Multiband") have incorporated their joint-opposition to the Plaintiffs' Motion for Leave to File Their First Amended Complaint within the second motion before this Court, DirectSat's Motion to Sever the HSP Defendants. [Docket Entry No. 101]. Defendants jointly argue the current Plaintiffs' claims were improperly joined against the HSP Defendants, and the HSP Defendants should therefore be severed for reasons discussed more fully *supra*. [*See generally*, *id*.].

The Court considered both motions without oral argument pursuant to L.Civ.R. 78.1. After fully considering all papers submitted in support of, and in opposition to, both motions, and for the reasons stated more fully below, Plaintiff's Motion for Leave to File Their First Amended Complaint is GRANTED and DirectSat's Motion to Sever the HSP Defendants is DENIED.

2. **Procedural and Factual Background**

Both the current and new Plaintiffs (collectively, "Plaintiffs") are technicians who perform installation and repair services on DIRECTV satellite television equipment for DIRECTV and the HSP Defendants. [*See generally*, Docket Entry No. 100-2, *Plaintiff's First Amended Complaint ("Complaint")* ¶¶ 77-143]. The Plaintiffs assert claims under both the FLSA and the New Jersey Construction Industry Independent Contractor Act, N.J.S.A. 34:20-1 *et seq*., claiming that the Defendants mislabeled the Plaintiffs as "independent contractors," when they were in fact "joint employees," of DIRECTV and/or an HSP Defendant, thereby

unlawfully denying wages and overtime pay to the Plaintiffs.  [*Id.* ¶¶ *144-166*].  Because of this case's lengthy procedural history, a brief history of this case is set forth below.

Both the current and new Plaintiffs were formerly plaintiffs in two separate collective-lawsuits in two different Federal Districts.  The current Plaintiffs were among approximately thirteen hundred opt-in plaintiffs in a conditionally-certified FLSA action in the Eastern District of Louisiana, *Lang et al. v. DIRECTV, Inc., et al.,* Case No. 10-1085.  [Docket Entry No. 100, ¶ 73].  On September 3, 2013, the *Lang* Court granted the parties' joint motion decertifying the class, dismissing the opt-in plaintiffs' claims without prejudice, and ordering the statute of limitations for each opt-in plaintiff to continue to toll for 60 days from the date of the order.  [*See Lang*, *supra*, Sept. 3, 2013 Order, at 1-2].  Within the 60 days granted by the *Lang* Court, on November 1, 2013, 325 of the *Lang*-plaintiffs filed a series of eleven new cases, including the instant case, in the Central District of California, *DeMarco v. DIRECTV, Inc., et al.*, Case No. 13-8127.  [*See* Docket Entry No. 64].  Pursuant to 28 U.S.C. § 1404(a), the Central District of California transferred those eleven cases to their respective appropriate home-districts on July 22, 2014, finding pursuant to the parties' stipulations, that the District of New Jersey was the appropriate District Court for this action.  [*See DeMarco*, *supra*, July 22, 2014 Order, at 7-9].

Following the transfer of this case to the District of New Jersey, the current Plaintiffs sought to re-centralize the aforementioned eleven new cases by filing a Motion to Transfer on October 16, 2014 with the United States Judicial Panel on Multidistrict Litigation ("JPML"), *In Re: DIRECTV, Inc., Fair Labor Standards Act (FLSA) and Wage and Hour Litigation,* MDL No. 2594.  [*See* Docket Entry No. 99].  The JPML denied the current Plaintiffs' Motion to Transfer on February 6, 2015, finding centralization was inappropriate because centralization would not

serve the convenience of the parties and witnesses, or further the just and efficient conduct of the litigation.   [*See* Docket Entry No. 99, MDL Order, at 3].

The new Plaintiffs similarly had consented to become opt-in plaintiffs in a collective action that was pending in the Eastern District of Missouri, *Arnold v. DIRECTV, Inc., et al*., Case No. 10-352.   [*See* Docket Entry No. 100-2, ¶ 75].   On December 12, 2014 the *Arnold* Court dismissed without prejudice the claims of the new Plaintiffs, who did not fit into a subclass, to pursue the individual claims raised herein, and ordered the statute of limitations for each opt-in plaintiff to be tolled for 90 days from the date of the order. [*See Arnold*, *supra*, December 12, 2014 Order, at 7-9]. Within the 90 days granted by the *Arnold* Court, the new Plaintiffs joined their individual claims in this action through the Amended Complaint filed on March 4, 2015. [*See generally*, Docket Entry No. 100-2]

Defendant DIRECTV operates a nationwide "Provider Network" to install and repair DIRECTV's satellite television equipment.   [*See* Docket Entry No. 100 Declarations of Ryan D. O'Dell, Exhibit 1, 2007 Home Service Provider Agreement, p.1].   This network consists of several levels of intermediaries having direct relationships with DIRECTV, with the HSPs comprising the largest of the intermediaries.   [Docket Entry No. 100, ¶ 12].   DirectSat, Multiband, and the other HSPs either provide DIRECTV with technicians to install and repair the satellite television equipment, or subcontract the installation and repair work to other subcontractors.   [*Id*. ¶¶ 12, 51-82].   The work and compensation guidelines of the HSP technicians, and their subcontractors, are contained in the contracts between DIRECTV and the HSPs, called "Provider Agreements."   [*Id.* ¶ 17].   It is these Provider Agreements that allegedly allow DIRECTV such a high degree of top-down control over the work of the HSP technicians and their subcontractors that the HSP technicians and their subcontractors are in fact

"joint employees" of DIRECTV. Furthermore, the Provider Agreements are allegedly almost identical in nature between DIRECTV and each nationwide HSP, including DirectSat and Multiband. [*Id*. ¶ 17].

On March 4, 2015, the Plaintiffs filed their Motion for Leave to File Their First Amended Complaint pursuant to Rule 15(a). Shortly thereafter, on March 20, 2015, Defendant DirectSat filed their opposition, and also filed their Motion to Sever the HSP Defendants pursuant to Rule 20(b) and Rule 21. Soon after, on March 23, 2015, Defendants DIRECTV and Multiband filed their opposition to the Plaintiffs' motion and joined in DirectSat's Motion to Sever. Because the Defendants have incorporated their joint-opposition to the Plaintiffs' Motion for Leave within DirectSat's Motion to Sever, the Court will address that motion first.

3. **Defendant's Motion to Sever the HSP Defendants.**

The Defendants jointly advance two arguments in support of their Motion to Sever: 1.) that the HSP Defendants are improperly joined together under Rule 20(a)(2) because the claims against the HSP Defendants do not arise from the same transaction or occurrence, and involve no common questions of law or fact; 2.) even if the HSP Defendants were properly joined under Rule 20(a)(2), the Court should discretionarily sever the HSP Defendants under Rule 20(b) and Rule 21 to protect the HSP Defendants from prejudice and promote judicial efficiency.

    a. **Joinder Analysis**

        i. **Standard of Review**

The permissive joinder of defendants is governed by Rule 20(a)(2) which provides: "[p]ersons […] may be joined in one action as defendants if: any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences[,] and any question of law or fact common to

5

all defendants will arise in the action." Fed. R Civ. P. 20(a)(2). Thus, "a plaintiff may not name more than one defendant in his original (or amended) complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant, and involves a common question of law or fact." *Murrakush Soc. v. New Jersey State Police,* (civil action numbers omitted) 2009 WL 2366132 at *238 (D.N.J. July 30, 2009).

Regarding the first prong of the test for permissive joinder, "courts generally apply a case-by-case approach when considering whether the facts of several claims constitute a single transaction or occurrence, or a series thereof." *Lopez v. City of Irvington*, No. 05-5323, 2008 WL 565776 at *2 (D.N.J. Feb. 28, 2008). Additionally, "transaction" is a word of flexible meaning and may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship. *Lopez,* 2008 WL 565776 at *2. (quoting *Boyer v. Johnson Matthey, Inc.*, No. 02-8382, 2004 WL 835082, *2 (E.D.Pa. April 16, 2004)). The second prong of the test for permissive joinder requires the Court to determine whether "any [common] question of law or fact ... will arise in the action." *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974). Courts have turned to the commonality requirement under Federal Rule of Civil Procedure 23(a) for an analogy. *Mosley,* 497 F.2d at 1333. That prerequisite necessitates a "very low threshold." *Barnes v. American Tobacco Co.*, 161 F.3d 127, 141 (3d Cir.1998). Indeed, "the second prong of that test 'does not require precise congruence of all factual and legal issues; indeed, joinder may be permissible if there is but one question of law or fact common to the parties.'" *Morris v. Paul Revere Ins. Grp.*, 986 F. Supp. 872, 885 (D.N.J. 1997) (citing *Mesa Computer Utilities, Inc. v. Western Union Computer Utilities, Inc.*, 67 F.R.D. 634, 636 (D.Del.1975)).

For courts applying Rule 20 and related Rules, the trend is toward entertaining the

broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged. *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). Moreover because the purpose of Rule 20(a) is to "promote trial convenience and expedite the final determination of a case, thereby preventing multiple law suits," "joinder is well within the Court's sound discretion, and is to be liberally granted." *Bell v. Lockheed Martin Corp.*, 2010 WL 3724271, at *12 (D.N.J. Sept. 15, 2010) (citing *Hagan v. Rogers*, 570 F.3d 146, 157 (3d Cir. 2009)). Nevertheless, "[i]n exercising its discretion [whether to permit joinder], the District Court must provide a reasoned analysis that comports with the requirements of the Rule, and that is based on the specific fact pattern presented by the plaintiffs and claims before the court." *Bell,* 2010 WL 3724271, at *12.

1. **Same Transaction or Occurrence Prong**

Defendants first argue that the Plaintiffs have not asserted any right to relief "jointly, severally, or in the alternative" against *both* of the HSP Defendants, thereby failing the first prong of the permissive joinder test. This argument however, fails to consider the full language of Rule 20(a)(2)(A), which *alternatively* allows permissive joinder of two defendants if the rights alleged against the defendants are transactionally related to the claim against the *first* defendant. *See Murrakush Soc.,* 2009 WL 2366132 at *28. (Noting although no joint or several liability is alleged, joinder can still be proper if claims against defendants are transactionally related); *see also In re EMC Corp.*, 677 F.3d 1351, 1356 (Fed. Cir. 2012) (The words "in the alternative," demonstrate an allegation of joint liability is not required). Therefore, even assuming there was no allegation of joint liability between the HSP Defendants, a shared transactional relationship between the claims against both HSP Defendants and the claims against DIRECTV will satisfy

Rule 20(a)(2)(A).

Defendants next argue that the Amended Complaint fails to comply with Rule 20(a)(2)(A) because the individual claims against each of the HSP Defendants do not arise from the same transaction or occurrence. The Defendants contend that the HSP Defendants were simply two members of the same industry, and were otherwise independent business entities, servicing different geographical locations, and making different decisions, with different witnesses. The Defendants cite to a series of cases demonstrating the proposition that simply because a group of defendants were members of the same industry, no transactional relationship existed to satisfy permissive joinder. *See Infinity Computer Prods., Inc. v. Broad Int'l Corp.*, 909 F. Supp. 2d. 415, 418-19 (E.D. Pa. 2012) (finding severance appropriate when no set of operative facts links defendants); *see also Waterfall Homeowners Ass'n v. Viega, Inc.,* 283 F.R.D. 571, 585 (D. Nev. 2012) (finding severance appropriate when the only commonality between defendants was their sale of a product that both featured yellow brass, and caused plaintiffs' injuries); *see also Insolia v. Philip Morris Inc.*, 186 F.R.D. 547, 550 (W.D. Wis. 1999) (finding joinder inappropriate where the only common allegation against defendants was a conspiracy to deceive plaintiffs about the negative health effects of smoking cigarettes); *see also Murakush Caliphate of Amexem Inc., v. N.J.*, 790 F. Supp. 2d. 241, 265-66 (D.N.J. 2001) (finding Complaint failed to meet the requirements of Rule 20 where "the Complaint is nothing but a journal of notes reflecting occurrences that happened, during this three-year period…"); *see also N.J. Mach., Inc. v. Alford Indus., Inc.*, 1991 WL 3401986 (D.N.J. Oct. 7, 1991) (court refused to permit amendment where, in the patent infringement context, the court found that "Infringement of the same patent by different machines and parties does not constitute the same transaction or occurrence to justify joinder of the new defendants").

The Defendants particularly rely upon *Wynn v. Nat'l Broad. Co.*, 234 F. Supp. 2d 1067, 1081 (C.D. Cal. 2002), to support their legal proposition. In *Wynn*, fifty former and current writers for television programming alleged "pattern or practice" age discrimination against fifty separate entities comprising every conceivable outgrowth of the television industry, including: broadcasting companies, studios, networks, talent agencies, and their corporate parents. The *Wynn* defendants moved to dismiss and, in the alternative, to sever both plaintiffs and defendants as improperly joined. The District Court granted the severance holding the mere fact that the defendants were members of a common industry did not warrant joinder of all defendants into a single action. *Wynn*, 234 F. Supp. 2d at 1078. Particularly, the *Wynn* Court stated while these defendants were technically a part of a similar industry, their independent and autonomous hiring decisions shared no concert of action, nor a common body of oversight from where the alleged industry-wide discriminatory policy-making could have originated. *Id.* at 1080-82.

The Court finds the *Wynn* case is distinguishable from the instant case. No one defendant in *Wynn* had the degree of control over another defendant as the degree of control alleged between DIRECTV and the subordinate HSPs. In the case at bar, the Plaintiffs alleged that DIRECTV almost directly controls both the HSP Defendants' and subcontractors' work functions, forming the central hub for two spokes, which no two defendants shared in *Wynn*. The concert of action that was lacking in *Wynn* exists between the HSP Defendants and DIRECTV because both HSP Defendants co-participated in DIRECTV's "fissured employment scheme" when the HSPs negotiated and signed the same Provider Agreements with DIRECTV. [*See* Docket Entry No. 100]. By signing this agreement, the HSP Defendants were bound by similar provisions in the Provider Agreement that branded the Plaintiffs independent contractors to avoid tax liability, while subjected the Plaintiffs to DIRECTV's *de facto* impermissibly high

9

degree of control. Not only is the signing of an identical Provider Agreement between DIRECTV and both HSP Defendants a transactional-relationship in the strict sense, but also the joint-employer liability of DIRECTV to the Plaintiffs necessarily flows through the HSP Defendants. The Court finds this scheme squarely fits within the "logical relations" test when considering the transactional requirement of Rule 20(a)(2)(A). Additionally, the Court finds this interpretation of the Rule comports with the broad and encompassing scope of Rule 20(a)(2) that encourages entertaining the broadest possible breadth of action consistent with fairness to the parties.   *See Hagan,* 570 F.3d at 153 (quoting *Gibbs*, 383 U.S. at 724).

Lastly, the Defendants' contentions that both the California District Court and the Judicial Panel for Multidistrict Litigation found these cases to be "individual" and require "individualized inquiry" is overstated because neither of those judicial bodies considered the issue of whether the permissive joinder of Defendants was proper in this case. The California District Court transferred the eleven original cases resulting from the *Lang* collective action, from California to the home-districts of each plaintiff, to alleviate the undue burden of litigating the claims of 300 plaintiffs in a single district. In doing so, it only considered whether it was proper to litigate the claims of approximately 300 original plaintiffs in a collective-action within a single district. In transferring this case to the District of New Jersey, the California District Court specifically stated "the transferee court in New Jersey would be better situated to determine the propriety of joinder of all of the *DeMarco* claims, so the entire case will be transferred there," leaving for this Court the decision of whether the Defendants' claims are properly joined.   [*See Demarco*, *supra*, Order at 9].

Similarly, in transferring the related *Alcaffe* case from California to Texas, the California District Court stated "courts presiding over these smaller cases would be far better positioned to

perform the detail intensive Rule 20 analysis." [*See* Docket Entry No. 110-2, *Alcaffe Order* at 8]. Similarly, the Judicial Panel for Multidistrict Litigation likewise did not address this issue. [*See* Docket Entry No. 99, MDL Order, at 3]. The Panel only considered whether to re-consolidate the newly severed eleven cases from the Central District of California back into a single collective action within a single district. [*Id.*]. Therefore, although both judicial bodies described the cases as "individual" and requiring "individualized inquiry," these terms were not used to weigh on the merits of the joinder question before this Court.

In light of the above, the Court finds the Plaintiffs have satisfied the first prong of Rule 20(a)(2).

### 2.  **Common Question of Law or Fact Prong**

The Defendants also advance the argument that the Plaintiffs' claims likewise do not raise a common question of law or fact as to both HSP Defendants, thereby failing Rule 20(a)(2)(B). Specifically, the Defendants argue that no individual Plaintiffs' claims against an HSP Defendant will implicate facts or evidence relevant to the claims against the other HSP Defendant. Defendants emphasize that the Plaintiffs' claims against an individual HSP Defendant will only involve HSP-specific pay policies and practices, independent contractor agreements, documents, and witnesses, and that these materials share no overlap. Lastly, the Defendants maintain that simply alleging a right to relief stemming from the same general laws is not enough to justify the joinder of the HSP Defendants into a single action.

The common question of facts in this case center on whether or not the Plaintiffs actually performed uncompensated work, and if the Plaintiffs did perform uncompensated work, how much uncompensated work did they in fact perform. Although the Plaintiffs claim they performed uncompensated work and provided rough estimates of the amount of work that was

uncompensated, these amounts must be substantiated by the testimony of various non-party witnesses such as the supervisors and coworkers of the Plaintiffs. [*See* Docket Entry No. 100-2; ¶¶ 77-143]. These non-party witnesses will be specific to each Plaintiff as presumably each Plaintiff had different supervisors, worked with different coworkers, and serviced different customers. As such, the proving of the questions of fact should be specific to each Plaintiff.

While answering these specific questions of fact for each Plaintiff may appear to be the "individualized inquiry", as Defendants highlight, these individualized questions of fact are less significant given the common questions of law in this case, and the common facts that will assist the Court in answering those questions of law. The Plaintiffs' have posed the following questions of law:

1. "Whether the policies and procedures DIRECTV mandated to Plaintiffs conferred sufficient control over Plaintiffs' work that, under governing law, they were not 'independent contractors,' but rather 'employees;'"
2. "Whether the economic realities between DIRECTV and the HSPs, on one hand, and Plaintiffs, on the other hand, were such that DIRECTV, the HSPs, or both were 'employers' of the Plaintiffs;" and
3. "Whether the piece-rate pay system each of the Plaintiffs were subject to violates the FLSA and state labor laws."

[Docket Entry No. 100, p.19].

These questions of law are applicable to both HSP Defendants because the identical nature of the Provider Agreements signed between DIRECTV and both HSP Defendants, and the identical guidelines the Provider Agreements imposed onto both HSP Defendants, allowed DIRECTV to control the conduct of the Plaintiffs in the same way, despite the superficial factual differences that existed in how the Plaintiffs' work was actually carried out. Similarly, the high-level discovery from either HSP Defendant should answer the aforementioned questions of law in a like manner.

The Provider Agreements, in application, allegedly created a factual situation wherein two distinct companies were serving almost identical functions for a shared parent company by performing identical work in an identical fashion.[1]  [*See generally* Docket Entry No. 100].  As alleged by the Plaintiffs, the only variation in the Provider Agreements was that the amounts of money that DIRECTV paid for work orders varied by geographic areas known as Designated Market Areas ("DMA")  [*Id*. at n.1].  The Plaintiffs further claim that the monetary variation only depended on the DMA and not the HSP; therefore if the two HSPs worked in the same DMA they would be paid by DIRECTV under an identical payment structure. [*Id.*]. Furthermore, the Provider Agreements ensured that Plaintiffs received the same scheduling orders and received the same pay, subject to the DMA variances, regardless of which HSP they actually worked for, which provides a uniform computation method of the damages for each Plaintiff.  [*Id.* ¶¶17-20].  DIRECTV lastly also set forth the hiring criterion for each HSP, detailed the manner in which the Plaintiffs worked, and provided the HSPs with supervisors directly.  [*Id.*].

Therefore, although there may not be a precise similarity between the factual scenarios of each HSP Defendant, there exist sufficient common questions of law between both HSP Defendants that will be efficiently answered by the common facts asserted by the Plaintiffs. Consequently the Court finds Rule 20(a)(2)(B) is satisfied, and the HSP Defendants are properly joined.

---

[1] The court is comfortable assuming the differences between the HSPs' respective provider agreements are non-material. Given the remedy for a misjoined party is dismissal of that party without prejudice with leave to re-file, the court is inclined to construe at a minimum, the non-materiality of any differences in the provider agreements, as true and in the light of the non-movant, plaintiff.  *See DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006) (dismissing a defendant is one of the two procedural mechanisms for severing misjoined parties.)

      a. **Severance Analysis**

Though the Defendants in this case are properly joined under Rule 20(a)(2), the Defendants ask the Court to exercise its broad discretion to sever the HSP Defendants pursuant to Rule 20(b) and Rule 21. The Defendants argue that severing the HSP Defendants will reduce confusion and avoid undue prejudice to the HSP Defendants.

      i. **Standard of Review**

Pursuant to Rule 20(b) this Court is empowered to "issue orders—including an order for separate trials—to protect a party against embarrassment, delay, expense, or other prejudice that arises from including a person against whom the party asserts no claim[,] and who asserts no claim against the party." Fed.R.Civ.P. 20(b). Similarly, despite the lack of misjoinder, this Court is empowered under Rule 21 to "organize problematic issues other than joinder problems." *Official Comm. of Unsecured Creditors v. Shapiro*, 190 F.R.D. 352, 355 (E.D. Pa. 2000) *citing* 4 Moore's Federal Practice § 21.02(1) ("The courts have properly concluded that they may issue orders under Rule 21 even in the absence of misjoinder and non-joinder of parties, to construct a case for the efficient administration of justice."). In addition, the Rule explicitly provides authority to sever parties *sua sponte* "on such terms as are just." Fed.R.Civ.P. 21; *see Stark v. Indep. Sch. Distr. No. 640*, 163 F.R.D. 557, 564 (D. Minn. 1995) ("the underlying purpose of Rules 19, 20 and 21 is to allow the district court itself to exercise its power to align the parties and the issues presented in a single lawsuit in a way that will foster judicial efficiency, while protecting parties against prejudice."). Specific factors to be considered in determining whether severance is warranted include: "(1) whether the issues sought to be tried separately are significantly different from one another, (2) whether the separable issues require the testimony of different witnesses and different documentary proof, (3) whether the party opposing the

severance will be prejudiced if it is granted, and (4) whether the party requesting severance will be prejudiced if it is not granted." *German v. Federal Home Loan Mortgage Corp.*, 896 F. Supp. 1385, 1400 (S.D.N.Y. 1995).

In determining the first factor, the Court finds that although the questions of fact, if tried separately, would be different enough to merit severance, severance is still improper because the questions of law would remain identical for the Defendants. Both the Plaintiffs' First and Amended Complaints assert violations of both the FLSA and New Jersey State Law against DIRECTV and one of the HSP Defendants. [*See generally* Docket Entry No. 100]. As stated before, these posed questions of law are applicable to both HSP Defendants. This is because the identical nature of the Provider Agreements signed between DIRECTV and both HSP Defendants, and the identical guidelines the Provider Agreements imposed onto both HSP Defendants, allowed DIRECTV to control the conduct of the Plaintiffs in the same way, despite the superficial factual differences that existed in how the Plaintiffs' work was actually carried out. Should this case be severed, the questions of law would remain identical in both resulting actions, forcing the parties to answer these questions multiple times. Similarly, should the case be severed, these questions of law would continue to be against DIRECTV in both resulting actions. Therefore the Court finds that the issues will be similar enough for severance to be inappropriate.

The Court next turns its attention to the second factor, whether the separable issues require testimony of different witnesses. The Court once again finds that while proving whether or not the Plaintiffs actually performed uncompensated work, and if so, how much, would require a host of different witnesses, the questions of law would require similar enough witnesses for the Court to keep the case joined. Assuming that both HSP Defendants actually carried out

15

the policies and procedures contained in the Provider Agreements signed with DIRECTV and imposed them on the Plaintiffs; the allegations that this fissured employment scheme was a top-down policy means that the high-level witnesses that promulgated these policies contained in the Provider Agreement will establish the lion's share of whether the Plaintiffs were in fact "joint employees" of DIRECTV and/or the HSP Defendants. The Court therefore finds the second factor likewise weighs against severance.

In determining the third and fourth factors about whether severance is warranted, despite the labored procedural history of this case, this case is in a relatively early stage of litigation before this Court. Because of this fact, the prejudice to either party is still speculative. The potential prejudice to the Plaintiffs arises from the possibility of being forced to litigate essentially the same case twice, thereby conducting twice as much discovery as necessary, and incurring twice the expense. The potential prejudice to the Defendants arises from the risk of jury confusion resulting from using a myriad of different witnesses to prove the Plaintiffs' aforementioned individualistic questions of fact, and being forced to expend resources to sit through discovery that is irrelevant to their particular HSP.  The cited prejudice of jury confusion is a type of prejudice more appropriately addressed during later stages of litigation. Moreover, discovery can be conducted regarding the commonality between the questions of law, offsetting the time and money spent on answering any individual questions of fact. In light of the foregoing, the Court believes it will be the best and most expeditious course of action to keep the parties joined, and the Defendants' request to sever is hereby denied.

    3. **Plaintiffs' Motion for Leave to File First Amended Complaint.**

Noting that Fed. R. Civ. P 15(a), provides that leave to amend "shall be freely granted when justice so requires," Plaintiffs contend that their Motion for Leave furthers the Court's

interest of efficiency without unfairly prejudicing the Defendants. Plaintiffs note that a Rule 16 conference has yet to occur and because this case is in its early stages, their Proposed Amended Complaint will not unduly prejudice any of the Defendants.

The Defendants have jointly incorporated their opposition to the Plaintiffs' Motion for Leave to Amend within DirectSat's Motion to Sever the HSP Defendants. The Defendants generally contend there is in fact undue prejudice to all Defendants because the Plaintiffs' claims are improperly joined against the HSP Defendants. Because no Plaintiffs assert claims against both HSP Defendants together, granting leave to amend would force the Defendants to expend additional resources conducting discovery and preparing for trial in a case with another HSP Defendant. The Defendants lastly contend that the proceedings will be needlessly delayed by keeping the HSP Defendants together.

### a. Legal Standard

Whether a motion to amend is considered under Rule 15 or Rule 20 of the Federal Rules of Civil Procedure, "the standard for adding a party is the same [. . .] the decision lies within the discretion of the court." *Liberty Mutual Ins. Co. v. Hurricane Logistics Co*., 216 F.R.D. 14, 16 n.5 (D.D.C. 2003). Pursuant to Fed.R.Civ.P. 15(a), leave to amend the pleadings is generally given freely. *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Nevertheless, the Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id*. However, where there is an absence of undue delay, bad faith, prejudice or futility, a motion for leave to amend a pleading should be liberally granted. *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).

In deciding whether to grant leave to amend, "prejudice to the non-moving party is the touchstone for the denial of the amendment." *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) (quoting *Cornell & Co., Inc. v. Occupational Health and Safety Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)). To establish prejudice, the non-moving party must make a showing that allowing the amended pleading would (1) require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial, (2) significantly delay the resolution of the dispute, or (3) prevent a party from bringing a timely action in another jurisdiction. *See Long*, 393 F.3d at 400. Delay alone, however, does not justify denying a motion to amend. *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). Rather, it is only where delay becomes "'undue,' placing an unwarranted burden on the court, or . . . 'prejudicial,' placing an unfair burden on the opposing party" that denial of a motion to amend is appropriate. *Adams v. Gould Inc.,* 739 F.2d 858, 868 (3d Cir. 1984). Moreover, unless the delay at issue will prejudice the non-moving party, a movant does not need to establish a compelling reason for its delay. *See Heyl & Patterson Int'l, Inc. v. F. D. Rich Housing of Virgin Islands, Inc.*, 663 F.2d 419, 426 (3d Cir. 1981).

    b. **Analysis**

As prejudice is a factor considered in weighing both whether to grant severance, and also whether to permit the amending of a Complaint, the Court has assumed that the Defendants' prejudice arguments in favor of severance also serve as the Defendants' incorporated-arguments against the filing of a First Amended Complaint. As such, the Court is unpersuaded by the Defendants' argument that granting Plaintiffs' Motion to Amend would be prejudicial. In addition to its findings regarding the denial of DirectSat's Motion to Sever, the Court notes that the Defendants do not challenge the Plaintiffs' assertions that the Provider Agreements were

identical in nature. Nor do the Defendants challenge the assertion that the Plaintiffs' job duties are virtually identical, regardless of which HSP Defendant actually employed them. This gives the Court no reason to believe that the case will not benefit from the useful common-discovery it anticipates arising, or that the Plaintiffs' filing their proposed First Amended Complaint will cause a delay or expense rising to the level of undue prejudice. The Plaintiffs' Motion for Leave to file their First Amended Complaint is hereby granted.

## IV.  CONCLUSION

For the reasons stated above, Defendant DirectSat's Motion to Sever the HSP Defendants is DENIED, and the Plaintiffs' Motion for Leave to File Their First Amended Complaint is GRANTED.   An appropriate Order follows.


Dated: October 28, 2015


　　　　　　　　　　　　　　　　　　　　　/s/ Tonianne J. Bongiovanni
　　　　　　　　　　　　　　　　　　**HONORABLE TONIANNE J. BONGIOVANNI**
　　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**


[Docket Entry Nos. 100 & 101 are hereby terminated.]